# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| EVERETT K. OGBURN, | ) |
| | ) |
| Movant, | ) No. 3:09-0494 |
| | ) (Criminal Case No. 3:03-00205-04) |
| v. | ) JUDGE ECHOLS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM

Everett K. Ogburn ("Ogburn") filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody. (Docket Entry No. 1.) The Government filed a response opposing the motion (Docket Entry No. 8) and Ogburn filed a reply (Docket Entry No. 11).

## I. PROCEDURAL HISTORY

The federal grand jury returned a multi-count Third Superseding Indictment (No. 3:03-00205, Docket Entry No. 572) naming Ogburn as a co-conspirator in an extensive drug distribution conspiracy operating in middle Tennessee between November 1, 2002 and October 27, 2003. Although the ringleader of the conspiracy, Andrez Miranda, and some fifteen co-defendants entered guilty pleas, Ogburn and co-conspirator Kenneth Crutcher proceeded to a joint jury trial. Ogburn was named in two counts of the Third Superseding Indictment: Count One, charging drug conspiracy involving five (5) or more kilograms of cocaine and a quantity of marijuana in violation of 21 U.S.C. §§ 841 & 846, and Count Twelve, charging possession of 500 grams or more of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The jury acquitted Ogburn

1

of the five-kilogram drug conspiracy as charged in Count One, but convicted him on the lesser included offense of conspiracy to distribute or possess with intent to distribute 500 grams or more of cocaine and a quantity of marijuana. The jury also convicted Ogburn on Count Twelve as charged. (No. 3:03-00205, Docket Entry No. 641, Verdict Form.)

Subsequently, the Court determined that Ogburn qualified for sentencing as a career offender, but the Court granted Ogburn's motion for a downward departure due to the Court's concern about the disparity between Ogburn's potential sentence and the sentences imposed on other co-conspirators. After departing two levels, the Court found an adjusted offense level of 35 and a criminal history category of VI, resulting in a guideline range of 292-365 months. After considering the pertinent sentencing factors, the Court imposed a sentence of 300 months on Counts One and Twelve, to run concurrently.

Ogburn appealed and the Sixth Circuit affirmed the convictions and sentence in an unpublished opinion entered on July 28, 2008. United States v. Ogburn, 288 Fed. Appx. 226 (6th Cir. 2008). The appellate court held that there was no error in refusing to give Ogburn's requested jury instruction concerning the distinction between joining a conspiracy and engaging in a buyer-seller relationship, and the sentence imposed was not procedurally unreasonable. Id. at 231-234.

Ogburn then filed the instant § 2255 motion raising four grounds for relief. In the first ground for relief, Ogburn actually raises two separate claims. First, he alleges that the Government failed to disclose exculpatory evidence under Brady v. Maryland by failing to reveal to him that Andrez Miranda would have testified in his favor. Second, Ogburn alleges that his counsel did not advocate his case because he did not interview or subpoena any of Ogburn's co-defendants "to find

the truth of the case," and had counsel done so, counsel could have proven that Ogburn was not involved in the conspiracy.

With respect to the first claim within ground one, Ogburn produces the declaration of Miranda, who is incarcerated in the same federal prison as Ogburn. (Docket Entry No. 1, Ex. 1, Miranda Decl.) Miranda attests that, at the beginning of his criminal case in 2003, the Assistant United States Attorney and Miranda's own counsel made "an unannounced arrangement for me to talk to the government without my knowledge or information." (Miranda Decl. ¶ 3.) Miranda claims his attorney told him that the prosecutor offered him a deal for a 13-year sentence "under the pre-arranged condition of falsely testifying against my co-defendants, Mr. Ogburn and Mr. Crutcher." (Id. ¶ 4.) Miranda states that he told his counsel he was willing to tell the truth regardless of any deal, and that he was going to do it for the 13-year plea agreement and accept all responsibility within his criminal wrongdoing. (Id. ¶ 5.)

Miranda further avers that, when he met with the prosecutor, he was told what to say instead of the truth. He alleges the prosecutor told him to say that Ogburn bought five kilos from him; however, he told the prosecutor that Ogburn did not buy five kilos from him. The prosecutor then told him to say that he fronted Ogburn five kilos. Miranda replied to the effect that he was not a fool and he would not front Ogburn five kilos because he did not know Ogburn and Ogburn might rip him off for that many kilos. (Id. ¶ 6.)

Miranda attests: "I told the prosecutor that it was not a lot of drugs involved at our first and only deal. Then I told the prosecutor that I will not tell a lie, I will only tell the truth." (Id. ¶ 6.) He claims the prosecutor and his own attorney did not give him the opportunity to testify for the 13-year plea deal and "that I was willing to give my testimony of how I only dealt with Mr. Ogburn one

3

time only." (Id.) Finally, Miranda avers that he refused to commit perjury under the direct orders of the prosecutor and his own court-appointed attorney, and so he turned down the prosecutor's offer, which cost him an unjust and excessive sentence which he is currently serving. (Id. ¶ 7.)

In ground two, Ogburn claims his trial counsel was ineffective for failing to interview and subpoena witnesses, for failing to investigate the case adequately, and for failing to put on a defense. In ground three, Ogburn claims his trial counsel was ineffective for failing to present a five-year plea offer from the Government. Ogburn states he submitted plea agreements to his attorney that Ogburn drafted himself, so counsel knew that Ogburn wished to plead guilty and avoid trial. He claims counsel's rejection of the plea deal without his consent violated his constitutional rights. Finally, in ground four, Ogburn contends that trial counsel was ineffective for failing to argue for his buyer-seller jury instruction and for failing to object to the jury instructions given by the Court. Ogburn claims he explained to his attorney that he was not involved in the conspiracy, but he had, in fact, only met the co-defendant (presumably Miranda) only once. He states he instructed his attorney to introduce the buyer-seller jury instruction, but counsel failed to act as he requested.

The Government contends that the content of Miranda's declaration is not exculpatory, and it is not substantially different from the Government's evidence at trial which dealt primarily with one drug transaction between Ogburn and Miranda. Even if Miranda's statement is considered to be exculpatory, the Government contends that the Court should view the co-conspirator's statement with suspicion, especially when Miranda had already been sentenced when he signed the declaration, he faced no additional penalty as a result of his declaration, and he had nothing to lose by signing it. The Government argues that the veracity and significance of Miranda's declaration is further called into question by the affidavit of Matthew Bradford, a special agent with the Drug

4

Enforcement Administration. (Docket Entry No. 8-1, Bradford Aff.) Bradford avers that he was one of the agents in charge of the investigation that led to the prosecution of Ogburn and Miranda. He was present at Miranda's proffer interview that occurred on June 29, 2004. He does not recall any other proffers or interviews with Miranda. Bradford recollects that the interview was not very long because it was terminated when it appeared that Miranda was not being truthful. Miranda insisted on claiming that he had been selling marijuana, not large amounts of cocaine. This was contrary to extensive evidence, including intercepted conversations over Miranda's phone that proved he had been involved in the distribution of many kilograms of cocaine. Bradford did not recall that Ogburn was ever mentioned during the interview or that Miranda was asked about Ogburn. After reviewing the notes he made during Miranda's interview, Bradford found there was no reference to Ogburn or any drug transaction between Miranda and Ogburn. (Bradford Aff.) Thus, the Government argues that this ground for relief is not supported by the record.

The Government further contends that Ogburn has not shown that his counsel rendered ineffective assistance in failing to investigate and subpoena witnesses. The Government points out that the only witness Ogburn specifically identifies that should have been called is co-defendant Miranda. Yet, the Government argues, there is no indication that Miranda would have testified. At the time of Ogburn's trial, Miranda had plead guilty, but he had not been sentenced, and Ogburn made no showing that Miranda would have waived is Fifth Amendment rights to testify in favor of Ogburn. Even if Miranda had testified consistently with his declaration, the Government contends, Ogburn has not shown that the outcome of the trial would have been different. Miranda's declaration asserts that he and Ogburn engaged in one cocaine transaction, although the amount was less than five kilograms. The jury found Ogburn guilty on Count One of the lesser included offense

5

of conspiracy to possess 500 grams or more of cocaine with intent to distribute and in Count Twelve with possession of 500 grams or more of cocaine with intent to distribute. Even if Ogburn were successful in getting the conspiracy count dismissed, the result still would not be different. Ogburn received a 300-month sentence on Count Twelve, which was imposed to run concurrently with the 300-month sentence on Count One.

Next, the Government contends that Ogburn is speculating when he suggests, based on comments made at the sentencing hearing, that the Government offered him a five-year plea deal that his counsel failed to convey to him. According to the Government, Ogburn's speculation is rebutted by the affidavit of his trial counsel, Hershell Koger, who attests that no such plea offer was made and even if a plea offer were made, it would have been conveyed to Ogburn. Finally, the Government points out that the Sixth Circuit rejected Ogburn's jury instruction claim on direct appeal and that Ogburn cannot now use a § 2255 motion to re-litigate an issue previously raised and decided on appeal.

Mr. Koger's affidavit, supplied by the Government to support its response to the § 2255 motion, is based on his recollection of events because he sent his file to Ogburn's appellate counsel and he did not have the file to review at the time the affidavit was written. (Docket Entry No. 8-2, Koger Aff.) Mr. Koger believes he sufficiently investigated the case and he does not recall any witnesses who would have been favorable for the defense, nor does he recall that Ogburn specifically requested any witnesses to be subpoenaed. Ogburn's position, explained to Mr. Koger during meetings for trial preparation, was that he knew practically none of the co-defendants and he was not involved in the conspiracy. Mr. Koger does not recollect that Ogburn supplied him with any material information that was helpful in trial preparation. At trial, the Government's evidence

6

relating to Ogburn showed his limited involvement in the conspiracy as Ogburn and Mr. Koger had previously discussed. There were no surprises at trial, and Mr. Koger is unaware of anything that could have been done differently at trial. (Koger Aff. at 1.)

Mr. Koger also attests that he is absolutely certain the Government did not offer Ogburn a plea agreement that included a five-year sentence. Mr. Koger recalls that, during the sentencing hearing, this Court made a comment about a five-year sentence, and Ogburn took that to mean that the Government had made a five-year plea offer, that the Court was aware of such an offer, and that the offer had never been submitted to Ogburn. Mr. Koger states that none of this is correct. First, the Court would not have been involved in plea negotiations. Second, prior to trial, Ogburn developed one or more unilateral plea agreement/guilty plea petitions on the belief that he could simply submit them to the Court to dispose of his case unilaterally. Mr. Koger took the position that it was improper to present Ogburn's *pro se* unilateral plea agreements to the Court. If Mr. Koger had received a five-year offer from the Government, he would have informed Ogburn of the offer. (Koger Aff. at 1-2.)

Finally, as to the buyer-seller jury instruction, Mr. Koger states that he submitted Ogburn's proposed jury instruction to the Court because he remembers personally carrying it to the Court's chambers and delivering it. He does not recall whether the instruction was used or rejected. (Koger Aff. at 2.)

With his reply, Ogburn produced a second declaration of co-defendant Miranda as well as Ogburn's own declaration. Miranda attests that he would have testified at Ogburn's trial and he is still willing to testify on Ogburn's behalf about his involvement with Ogburn, but if anyone asks him about additional drugs, he will invoke his Fifth Amendment right not to incriminate himself.

7

(Docket Entry No. 11, Ex. A, Miranda Decl. ¶¶ 3, 5-6.) Further, Miranda attests that Agent Bradford was not present during Miranda's second meeting or proffer interview with the Government and he is willing to testify about what happened during that meeting. (Id. ¶¶ 4, 7.) Ogburn avers that he did not know about a plea deal offered by the Government because his counsel did not tell him about it and had he known of the plea deal, he would have taken it without a doubt. Instead, he is serving a 300-month sentence. (Docket Entry No. 11, Ex. B, Ogburn Decl. ¶¶ 3, 5.) He also avers that he tried to have his attorney enter two plea offers he drafted himself and this conduct shows he would have accepted the Government's plea offer. (Id. ¶ 6.)

## II. STANDARDS OF REVIEW

To prevail on a § 2255 motion, Ogburn must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, 512 U.S. 339, 348 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993).

To establish ineffective assistance of counsel, Ogburn must show that his counsel's performance was deficient and that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Ogburn must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). A reasonable probability is one sufficient to undermine

8

confidence in the outcome; it is a less demanding standard than "more likely than not." Id. A court need not address both parts of the Strickland test if the movant makes an insufficient showing on one. Strickland, 466 U.S. at 697.

The Supreme Court has cautioned, however, that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Ogburn is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that he is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). Finally, when the district judge also hears the collateral proceedings, as is the case here, the judge may rely on his recollections of the prior proceedings in ruling on the collateral attack. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

### III. ANALYSIS

The Court concludes that an evidentiary hearing is not warranted because the Court's review of the entire record of the proceedings, including the affidavits and declarations submitted in support of and in opposition to the § 2255 motion and the transcripts of Ogburn's trial and sentencing hearing, shows conclusively that Ogburn is not entitled to relief. See Green, 65 F.3d at 548. The affidavit of Mr. Koger satisfies the Court that Ogburn did not receive deficient representation of

9

counsel or that such deficient representation prejudiced Ogburn. See Strickland, 466 U.S. at 687.

The Court first considers Ogburn's ground one, in which he claims that co-conspirator Miranda would have testified in his favor and that the Government violated Brady v. Maryland by failing to disclose Miranda's statements made during a proffer interview that were exculpatory to Ogburn. Special Agent Matt Bradford disputes Miranda's version of the proffer interview, and Miranda claims that Agent Bradford was not even present at the interview. The Court will not give any weight to Special Agent Bradford's affidavit, and the Court will take as true the content of Miranda's declarations.

In his declarations, Miranda did not deny that Ogburn was a member of the charged conspiracy; rather, he admitted that he dealt with Ogburn on one occasion. Miranda simply denied that the drug transaction he engaged in with Ogburn on that one occasion involved five kilograms or more of cocaine.

Miranda indicates he was willing to testify at Ogburn's trial and that he would testify now on Ogburn's behalf. Had Miranda provided his testimony at trial or at an evidentiary hearing on the instant motion, Miranda would corroborate much of the Government's evidence against Ogburn. The Government introduced into evidence approximately twenty (20) recorded telephone conversations between Miranda and Ogburn which convinced the jury that Ogburn was a member of the drug conspiracy. (No.3: 03-00205, Trial Exs. 1-7, 9-21.) In addition, the Government introduced surveillance photos of Ogburn driving a white Mustang connected to the drug conspiracy and of Ogburn entering and leaving an apartment used by Miranda in his drug trade. The Government also presented the testimony of co-conspirator Adolpho Arrizon, Miranda's runner, who provided the jury with details of a cocaine transaction involving Miranda and Ogburn that

occurred on August 12, 2003. (Id., Ex. 8.) Arrizon rode with Ogburn to protect a quantity of cocaine Miranda had given to Ogburn because it was the first time Miranda had had any dealings with Ogburn. (No. 3:03-00205, Docket Entry No. 856, Trial Tr. Vol. 3 at 361.) The Government did not produce any other evidence at trial of subsequent cocaine deals between Miranda and Ogburn. Thus, Arrizon's trial testimony is consistent with Miranda's statement in his first declaration filed in this case that "I told the prosecutor that it was not a lot of drugs involved at our first and only deal."

The jury found Ogburn guilty of conspiracy and possession with intent to distribute 500 grams or more of cocaine. The convictions were consistent with the trial evidence and Miranda's post-trial statements, which cannot be considered exculpatory for Ogburn. Miranda's testimony would not have changed the result at Ogburn's trial. Because Ogburn has not shown that the testimony Miranda could have offered constitutes exculpatory Brady material, he has necessarily also failed to show that the Government violated Brady by failing to disclose Miranda's statements to him prior to trial.

As to the second part of ground one and ground two, Ogburn has not established that his trial counsel rendered ineffective assistance. Ogburn did not specify the names of any witnesses who should have been interviewed and subpoenaed except for Miranda, and the Court has just explained why Miranda's testimony would not have helped Ogburn before the jury. The other co-defendants were also represented by attorneys and they were at various stages of resolving charges against them. Ogburn produces no evidence that the other co-defendants had knowledge that would have assisted Ogburn's defense or that those co-defendants would have been willing to waive their Fifth Amendment rights and testify in Ogburn's favor at his trial.

11

Ogburn has produced nothing but his own conclusory allegation that Mr. Koger failed to investigate the case. Mr. Koger avers that he did investigate the case and that he reviewed with Ogburn the discovery that was received from the Government. Further, the Court independently reviewed the transcript of the jury trial conducted before the Court and notes that Mr. Koger cross-examined most of the Government's witnesses, he brought out points in Ogburn's favor and he called one witness in Ogburn's defense. Ogburn has not shown that his counsel performed deficiently under Strickland.

The third ground for relief concerning a plea offer for a five-year sentence lacks support in the record. Ogburn produces no evidence that the Government made such an offer to him through defense counsel. Mr. Koger flatly denies that any such offer was made, but any plea offer that was made was discussed with Ogburn. This issue appears to have arisen due to the Court's comments at the sentencing hearing that the Court recollected a plea offer was on the table that "was ten years" and it "may have been as low as five." (No. 3:03-00205, Docket Entry No. 861, Vol. 8, Sent. Tr. at 999-1000.) The Court stated that it may have been confusing Ogburn's or co-defendant Crutcher's case with another case. (Id. at 1000.) There is no proof in the record that a five-year plea offer was made to Ogburn or that defense counsel failed to convey such a plea offer to Ogburn, even if Ogburn was willing to accept such an offer. This claim is without merit.

Finally, the record shows that Mr. Koger provided to the Court Ogburn's requested jury instruction on a buyer-seller relationship to support his theory that he was not a member of the drug conspiracy. The Court refused to give the instruction. The Sixth Circuit discussed the issue on appeal, noting the instruction said: "Single acts, without more, are insufficient to link a defendant to a conspiracy." Ogburn, 288 Fed. Appx. at 232. The Sixth Circuit ruled that "a district court is not

12

required to explicitly clarify the difference between a buyer-seller relationship and a conspiracy so long as it 'has given a complete instruction reciting all the elements of conspiracy and requirements for membership in a conspiracy.'" Id. (quoted case omitted).  The appellate court reviewed this Court's conspiracy instructions and determined that they accurately stated the required elements for membership in a conspiracy.  Id.  Therefore, the Sixth Circuit affirmed the Court's decision not to give Ogburn's requested instruction.

Mr. Koger cannot be found deficient under Strickland for presenting the proposed jury instruction to the Court.  Consequently, this last ground for relief is also without merit.

## IV. CONCLUSION

For all of the reasons stated, Everett K. Ogburn's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence will be denied.  Because the record shows conclusively that Ogburn is not entitled to relief, an evidentiary hearing is not warranted on any issue.  See Green, 65 F.3d at 548.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE